**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| MOBOLUTIONS, LLC §<br>§<br>   Plaintiff, §<br>§<br>v. §<br>§<br>GEON PERFORMANCE SOLUTIONS, §<br>LLC and VITAL CORE §<br>CORPORATION, §<br>§<br>   Defendants. § | Civil Action No. 4:23-cv-969-ALM-KPJ |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the following motions:

- Defendant Geon Performance Solutions, LLC's ("Geon") Motion to Dismiss Plaintiff's First Amended Complaint (the "Second Motion to Dismiss") (Dkt. 13), to which Plaintiff Mobolutions, LLC ("Mobolutions") filed a response (Dkt. 18), Geon filed a reply (Dkt. 22), and Mobolutions filed a sur-reply (Dkt. 26);

- Defendant Vital Core Corporation's ("Vital Core") Motion to Dismiss for Lack of Personal Jurisdiction (the "Third Motion to Dismiss") (Dkt. 16), to which Mobolutions filed a response (Dkt. 25), and Vital Core filed a reply (Dkt. 29);

- Geon's Corrected Motion to Strike Plaintiff's Second Amended Complaint (the "Motion to Strike") (Dkt. 28), to which Mobolutions filed a response (Dkt. 31), and Geon filed reply (Dkt. 33);

- Vital Core's Combined Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) and Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction Under Rule 12(b)(2) (the "Fourth Motion to Dismiss") (Dkt. 30), to which Mobolutions filed a response (Dkt. 34), and Vital Core filed a reply (Dkt. 37);

- Mobolutions's Motion for Leave to File Second Amended Complaint (the "Motion for Leave") (Dkt. 32), to which Geon filed a response (Dkt. 36), and Mobolutions filed a reply (Dkt. 39); and

- Mobolutions's Motion to Defer Ruling on Vital Core's Combined Motion to Transfer or Dismiss and for Leave to Allow Plaintiff to Conduct Limited Jurisdictional Discovery (the "Motion for Jurisdictional Discovery") (Dkt. 35), to which Vital Core filed a response (Dkt. 38).

1

For the reasons that follow, the Motion to Strike (Dkt. 28) and the Motion for Leave (Dkt. 32) are **GRANTED**, and the Second Motion to Dismiss (Dkt. 13), the Third Motion to Dismiss (Dkt. 16), the Fourth Motion to Dismiss (Dkt. 30), and the Motion for Jurisdiction Discovery (Dkt. 35) are **DENIED AS MOOT**.

## I.    BACKGROUND

On October 3, 2023, Mobolutions initiated this lawsuit by filing a complaint (the "Complaint") (Dkt. 2) in the 493rd District Court, Collin County, Texas, wherein Mobolutions asserted a quantum meruit claim against Geon. *See* Dkts. 1 at 1; 2 at 5–6. On October 30, 2023, Geon removed this action to federal court on the basis of diversity jurisdiction. *See* Dkt. 1 at 3–5. On November 6, 2023, Geon filed a motion to dismiss (the "First Motion to Dismiss") (Dkt. 4). *See* Dkt. 4. On November 13, 2023, the District Judge issued the Order and Advisory (Dkt. 5) permitting Mobolutions to "replead as necessary to comply with the Federal Rules of Civil Procedure and the Court's Local Rules." Dkt. 5 at 1. On November 20, 2023, Mobolutions filed an amended complaint (the "First Amended Complaint") (Dkt. 6), wherein Mobolutions added Vital Core as a defendant. *See* Dkt. 6 at 1.

In the First Amended Complaint (Dkt. 6), Mobolutions alleges that, in 2019, Geon was acquired by SK Capital Partners V-A, LP and SK Capital Partners V-B, LP (collectively, "SK Capital"). *See id.* at 1, 3. In 2020, Geon entered an agreement with Vital Core to assist in the segregation and migration of data from "Avient," a company affiliated with SK Capital, to Geon. *See id.* at 3–4. In September 2022, Vital Core entered an agreement with Mobolutions to facilitate that same "data migration process." *Id.* at 4. According to Mobolutions, at some point thereafter, "Geon was abandoned, in part by Vital Core." *Id.* As a result, Mobolutions "increased its personnel on the project to provide technical support services to Geon." *Id.* Likewise, Mobolutions alleges

2

that Avient and Vital Core were wholly "unprepared" to complete the integration process by the necessary deadline and, thus, "Mobolutions filled this gap." *Id.*

Mobolutions further alleges that it provided a number of technical support services directly to Geon. *See id.* at 5. Indeed, according to Mobolutions, it "stepped in and spent thousands of support hours providing services to Geon in connection with putting a plan together, setting up new systems, working to segregate and migrate data to Geon's systems, training Geon representatives, managing software for Geon, and providing technical support for Geon." *Id.* Mobolutions alleges that Geon and Vital Core knew the cost of its services and accepted those services anyway. *See id.*

Mobolutions alleges that, as part of the initial arrangement, Geon provided funds to Vital Core, and Vital Core "was to pay Mobolutions" for the services it provided to Geon. *Id.* at 7. Despite receiving "some funds from Geon," Vital Core failed to pay Mobolutions. *Id.* As a result, Mobolutions "threatened Geon to discontinue providing services." *Id.* In response to this threat, "Geon promised to take over the relationship" and, in fact, paid Mobolutions for the services it rendered during December 2022. *Id.* Furthermore, Geon allegedly agreed to continue paying Mobolutions directly for its services. *See id.* However, Geon—like Vital Core—failed to make those payments. *Id.* Once Geon defaulted on its obligation, Mobolutions informed Geon that it would suspend its services. *Id.* Thereafter, Mobolutions continued rendering services to Geon, but only received partial payments. *See id.* at 9–11. Given the incomplete payments, Mobolutions "again threatened Geon that it would discontinue services." *Id.* at 11. This failure eventually "led to the termination of the parties' relationship." *Id.*

Based on the foregoing allegations, Mobolutions asserted a breach of contract claim against Geon and Vital Core, a fraud claim against Geon, and, in the alternative to breach of contract, a

3

quantum meruit claim against Vital Core. *See id.* at 12–15. In total, Mobolutions seeks several hundred thousand dollars in damages. *See id.* at 15.

On November 28, 2023, pursuant to 28 U.S.C. § 636, the District Judge referred this matter to the undersigned for all pretrial proceedings. *See* Dkt. 10. Shortly thereafter, the Court denied the First Motion to Dismiss (Dkt. 4) as moot in light of the amended pleading. *See* Dkt. 12 at 4. On December 11, 2023, Geon filed the Second Motion to Dismiss (Dkt. 13), wherein Geon argues that Mobolutions fails to state a claim upon which relief can be granted. *See* Dkt. 13. Two days later, Vital Core filed the Third Motion to Dismiss (Dkt. 16), wherein Vital Core argues that any claims against it should be dismissed for lack of personal jurisdiction or, in the alternative, this matter should be transferred to a more appropriate venue. *See* Dkt. 16. On December 22, 2023, Mobolutions filed a response to the Second Motion to Dismiss (Dkt. 13). *See* Dkt. 18. On December 29, 2023, Geon filed a reply in support of the Second Motion to Dismiss (Dkt. 13). *See* Dkt. 22.

On January 3, 2024, Mobolutions filed another amended pleading (the "Second Amended Complaint") (Dkt. 24), wherein Mobolutions attempts to rectify the deficiencies identified by the Second Motion to Dismiss (Dkt. 13) and the Third Motion to Dismiss (Dkt. 16). *See* Dkt. 24. On January 5, 2024, Mobolutions filed a response to the Third Motion to Dismiss (Dkt. 16). *See* Dkt. 25. That same day, Mobolutions filed a sur-reply in opposition to Second Motion to Dismiss (Dkt. 13). *See* Dkt. 26. On January 12, 2024, Geon filed the Motion to Strike (Dkt. 28), wherein Geon argues that the Second Amended Complaint (Dkt. 24) was impermissibly filed without the Court's leave and, on this basis, should be stricken. *See* Dkt. 28. Also on January 12, 2024, Vital Core filed a reply in support of the Third Motion to Dismiss (Dkt. 16). *See* Dkt. 29.[1]

---

[1] In its reply, Vital Core asserts that the Third Motion to Dismiss (Dkt. 16) was rendered moot by the filing of the Second Amended Complaint (Dkt. 24). *See* Dkt. 29 at 1–2. However, this conclusion turns on the resolution of the Motion to Strike (Dkt. 28) and the Motion for Leave (Dkt. 32), which are currently pending before the Court.

4

On January 17, 2024, Vital Core filed the Fourth Motion to Dismiss (Dkt. 30), wherein Vital Core requests that this case be transferred or, in the alternative, that any claims asserted against it be dismissed for lack of personal jurisdiction. *See* Dkt. 30. On January 25, 2024, Mobolutions filed a response to the Motion to Strike (Dkt. 28). *See* Dkt. 31. That same day, Mobolutions filed the Motion for Leave (Dkt. 32), wherein Mobolutions seeks leave to file an amended pleading (the "Third Amended Complaint") (Dkt. 32-1), which is identical to the Second Amended Complaint (Dkt. 24). *See* Dkt. 32. In the Third Amended Complaint (Dkt. 32-1), Mobolutions states similar factual allegations as it did in the First Amended Complaint (Dkt. 6). *Compare* Dkt. 6, *with* Dkt. 32-1. However, Mobolutions includes a number of factual allegations aimed at establishing a prima facie case of personal jurisdiction over Vital Core. Specifically, Mobolutions alleges:

> Vital Core's scope of services required it to provide services to all of Geon's facilities, including those located in the Houston, Texas area. Vital Core hired Mobolutions to provide . . . services to fulfill a portion of Vital Core's contract with Geon, thus necessitating the provision of services to all of Geon's facilities, including the Houston, Texas facilities. Mobolutions was hired in part because it is located in Texas, in geographic proximity to these two Geon facilities located in Texas. Additionally, or in the alternative, Defendants have purposefully directed their activities at Texas and the claims in this lawsuit result from alleged injuries that arise out of or relate to those activities, including without limitation Defendants committed torts in whole or in part in Texas.

Dkt. 32-1 at 4. Furthermore, Mobolutions includes screenshots of emails exchanged between representatives of Mobolutions and Geon in an attempt to bolster its breach of contract and fraud claims. *See id.* at 11–12, 16. Likewise, Mobolutions alleges that "Geon verbally represented to Mobolutions that Geon would pay Mobolutions directly for the services Mobolutions provided to Geon." *Id.* at 11.

On February 1, 2024, Geon filed a reply in support of the Motion to Strike (Dkt. 28). *See* Dkt. 33. That same day, Mobolutions filed a response in opposition to the Fourth Motion to Dismiss (Dkt. 30). *See* Dkt. 34. Also on February 1, 2024, Mobolutions filed the Motion for

Jurisdictional Discovery (Dkt. 35), wherein it requests leave to conduct limited discovery into Vital Core's contacts with Texas for the purpose of establishing personal jurisdiction. *See* Dkt. 35. On February 8, 2024, Geon filed a response in opposition to the Motion for Leave (Dkt. 32). *See* Dkt. 36. That same day, Vital Core filed a reply in support of the Fourth Motion to Dismiss (Dkt. 30). *See* Dkt. 37. On February 15, 2024, Vital Core filed a response in opposition to the Motion for Jurisdictional Discovery (Dkt. 35). *See* Dkt. 38. Also on February 15, 2024, Mobolutions filed a reply in support of the Motion for Leave (Dkt. 32). *See* Dkt. 39.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. "After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists." *Lahman v. Nationwide Provider Sols.*, No. 17-cv-305, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a prima facie case supporting jurisdiction,' if a court rules on a motion without an evidentiary hearing." *Id.* (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). "When considering the motion to dismiss, '[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.'" *Id.* (quoting *Int'l Truck & Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 557 (N.D. Tex. 2003)). However, "[t]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (first citing *Felch v. Transportes Lar-Mex SA DE CV*,

92 F.3d 320, 326 n.16 (5th Cir. 1996); and then citing *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)).

Courts conduct a two-step inquiry when a defendant challenges personal jurisdiction: (1) the defendant "must be amenable to service of process" under Texas' long-arm statute; and (2) the "assertion of jurisdiction" over the defendant must comport with the Due Process Clause of the Constitution. *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales & Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). "Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees." *Green Ice Tech., LLC v. Ice Cold 2, LLC*, No. 17-cv-341, 2018 WL 3656476, at *5 (E.D. Tex. Aug. 1, 2018) (citing *Bullion*, 895 F.2d at 216). Federal due process permits personal jurisdiction over a nonresident defendant that has "minimum contacts" with the forum state, subject to the limit of not offending "traditional notions of 'fair play and substantial justice.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2009)).

"The extent of the contacts determines whether the court's jurisdiction is specific or general." *Engel v. Hilton Worldwide*, No. 20-2249, 2020 WL 5441568, at *4 (S.D. Tex. Sept. 10, 2020) (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). Courts have "*general jurisdiction* over a nonresident defendant 'to hear any and all claims' if that defendant's contacts with the forum are so 'continuous and systematic' as to render it 'essentially at home' in the forum." *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 560 (S.D. Tex. 2021) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "Demonstrating that general personal jurisdiction exists is difficult and requires 'extensive contacts between a defendant and a forum.'" *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). In contrast,

7

"[s]pecific jurisdiction applies when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs. Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp.*, 253 F.3d at 868). Thus, "the defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[S]pecific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." *Id.* at 499 (citations omitted).

"Personal jurisdiction, like subject matter jurisdiction, is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 231–32 (5th Cir. 2012) (citation omitted) (cleaned up). Thus, "personal jurisdiction claims are 'threshold grounds for denying audience to a case on the merits,' and require that the courts reach the threshold claims before reaching claims on the merits." *Id.* at 232 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999)). Furthermore, a dismissal for lack of personal jurisdiction does not operate as an adjudication on the merits and is without prejudice. *See ITL Int'l, Inc. v. Café Soluble, S.A.*, 464 F. App'x 241, 244 (5th Cir. 2012) (per curiam) (quoting FED. R. CIV. P. 41(b)).

B. **Futility of Amendment**

"An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss

8

filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "not bound to accept as true 'a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### C. Particularity Requirement

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "The particularity demanded by Rule 9(b)

necessarily differs with the facts of each case." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067–68 (5th Cir. 1994) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). The Fifth Circuit further explained that Rule 9(b) requires "[a]t a minimum . . . that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citations omitted); *accord Tel–Phonic Servs. , Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992) (citation omitted) (holding that Rule 9(b) requires a plaintiff to plead "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby'").

The "particularity demanded by Rule 9(b) is supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570) (alteration in original). Rule 9(b)'s particularity requirement supplements Rule 8(a), which "prohibits any claims that are merely conceivable rather than plausible." *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) (citing *Iqbal*, 556 U.S. at 680).

### III.   ANALYSIS

#### A.   Motion to Strike

In the Motion to Strike (Dkt. 28), Geon asks the Court to strike the Second Amended Complaint (Dkt. 24) because "Mobolutions has already amended once as a matter of right" and, thus, the Second Amended Complaint (Dkt. 24) was improperly "filed without leave or consent as required." Dkt. 28 at 1. In its response, Mobolutions asserts that, while it amended its pleading twice, only the second amendment was as a matter of course. *See* Dkt. 31 at 1. According to Mobolutions, its first amendment was made pursuant to the District Judge's order granting leave

to replead and, for this reason, Mobolutions preserved its right to amend as a matter of course. *See id.* Mobolutions is mistaken.

Under Rule 15 of the Federal Rules of Civil Procedure, a "party may amend its pleading once as a matter of course." FED. R. CIV. P. 15(a)(1). However, "if the pleading is one to which a responsive pleading is required," the amendment must be made no later than "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). "When this time period expires or the party already has amended the pleading, this provision no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1480 (3d ed. 2023).

In the present case, the Second Amended Complaint (Dkt. 24) is untimely and improperly filed for two reasons. ***First***, the right to amend as a matter of course expired twenty-one days after Mobolutions received service of the First Motion to Dismiss (Dkt. 4). That is, Mobolutions could amend its pleading as of right no later than November 27, 2023. Yet Mobolutions filed the Second Amended Complaint (Dkt. 24) on January 3, 2024—fifty-eight days after receiving service of the First Motion to Dismiss (Dkt. 4). ***Second***, the right to amend as a matter of course terminated the moment Mobolutions amended its pleading for the first time. *See* 6 WRIGHT & MILLER, *supra*, § 1480. The fact that Mobolutions filed the First Amended Complaint (Dkt. 6) pursuant to the District Judge's order permitting repleading is immaterial. Mobolutions only gets one bite at the apple. Therefore, because Mobolutions did not obtain the opposing party's written consent or the Court's leave before filing the Second Amended Complaint (Dkt. 24), it is stricken. *See, e.g.*, *Klein v. Marvin Lumber & Cedar Co.*, 575 F. App'x 347, 350 (5th Cir. 2014).

11

**B.     Motion for Leave**[2]

In the Motion for Leave (Dkt. 32), Mobolutions requests leave to file the Third Amended Complaint (Dkt. 32-1) in the event the Court strikes the Second Amended Complaint (Dkt. 24). *See* Dkt. 32 at 1. In the Third Amended Complaint (Dkt. 32-1)—identical to the Second Amended Complaint (Dkt. 24)—Mobolutions includes facts aimed at establishing a prima facie case of personal jurisdiction over Vital Core. *See* Dkt. 32-1 at 4. Furthermore, Mobolutions includes screenshots of emails to bolster its breach of contract and fraud claims against Geon—heading off the arguments for dismissal raised by Geon in the Second Motion to Dismiss (Dkt. 13). *See id.* at 11–12, 16. In response, Geon argues that permitting amendment would be futile with respect to Mobolutions's breach of contract and fraud claims. *See* Dkt. 36 at 2–4. Thus, the Court considers the sufficiency of each of these claims in turn below.

   **1.     Breach of Contract**

Geon argues that Mobolutions's breach of contract claim fails because there is not a valid contract between the parties; that is, according to Geon, Mobolutions does not allege a "clear offer, acceptance, and mutual assent to [the] *material terms* required . . . to reasonably infer a valid contract." Dkt. 36 at 3 (emphasis in original). Similarly, Geon argues that any emails exchanged between the parties are too "vague and ambiguous" to demonstrate a "meeting of the minds" on the essential terms of any purported agreement. *See id.* at 3–4. In its reply, Mobolutions argues that amendment is not futile because, based on the totality of its allegations, Mobolutions "sufficiently alleges a cause of action for breach of contract." Dkt. 39 at 3. The Court agrees with Mobolutions.

---

[2] Geon contends that Ohio law, rather than Texas law, governs this dispute. *See* Dkt. 13 at 5 n.2, 10 n.3. Nevertheless, Geon asserts—and the Court agrees—that the law of Ohio and Texas are substantively identical with respect to breach of contract and fraud. *See id.* Because neither party briefed this issue, and because the law is relevantly similar, the Court need not make a finding on this issue at this time.

The elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st. Dist.] 2001, no pet.)). A binding contract may be express or implied and, in either case, requires "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, and (4) each party's consent to the terms." *Logan v. Marker Grp., Inc.*, No. 22-cv-174, 2024 WL 3489208, at *8 (S.D. Tex. July 18, 2024) (cleaned up) (quoting *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ)).

In the present case, Mobolutions references a series of emails from Sergey Boytsov ("Mr. Boytsov"), Geon's Chief Information Officer, wherein Mr. Boytsov represents that Geon will likely have to pay Mobolutions directly for services previously rendered,[3] as well as for services to be rendered in the future. *See* Dkt. 32-1 at 12–14. Geon objects on the grounds that such equivocal statements are insufficient to demonstrate an offer, acceptance, and a meeting of the minds on the essential terms of the agreement. *See* Dkt. 36 at 3. The Court agrees with Geon that equivocal statements lacking definite terms are generally insufficient to demonstrate a meeting of the minds. *See, e.g.*, *Williams v. Bryan of Ladera*, No. 22-cv-57, 2024 WL 3297458, at *5 (E.D. Tex. June 4, 2024), *R. & R. adopted*, 2024 WL 3297345 (E.D. Tex. July 2, 2024). But beyond equivocations, Mobolutions alleges that Geon "knew Mobolutions'[s] pricing and the amounts

---

[3] A legally enforceable contract must be supported by consideration; that is, the promise must induce the action and the action must induce the promise. *See* RESTATEMENT (SECOND) OF CONTRACTS § 71 (AM. L. INST. 1981). For this reason, past consideration is "not consideration" at all. *See Purselley v. Lockheed Martin Corp.*, 322 F. App'x 399, 402 (5th Cir. 2009) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex. 2006)). It is unclear how Geon's "promise" to compensate Mobolutions for work already undertaken is supported by consideration. However, Geon does not raise this issue, and the Court declines to consider it *sua sponte*. In any event, Mobolutions states a plausible claim for relief with respect to the work which was yet to be completed.

13

charged for [its] services," "verbally represented to Mobolutions that Geon would pay Mobolutions directly for the services Mobolutions provided to Geon," accepted Mobolutions's tender of services, and then failed to fully compensate Mobolutions once that work was completed. *See* Dkt. 32-1 at 8–9, 11–12, 14–16. These allegations plausibly allege that Geon breached a contract, whether it be express or implied by the actions and conduct of the parties. *See, e.g.*, *Fustok v. UnitedHealth Grp., Inc.*, No. 12-cv-787, 2012 WL 12937486, at *4 (S.D. Tex. Sept. 6, 2012) ("[The plaintiff] alleges that [the defendant] represented that it would compensate [the plaintiff] for providing medical services. If these allegations are proven, it would establish the existence of a contract. [The plaintiff] also alleges that he performed his contractual obligations by rendering the medical services, and that [the defendant] breached its contractual obligation to pay for those services. . . . These factual allegations satisfy the pleading requirements for a breach of contract claim based on an implied-in-fact contract." (internal citations omitted)).

### 2.     Fraud

Geon argues that Mobolutions's fraud claim, as amended, "continues to stand on . . . conclusory assertions . . . and fails [to] make specific allegations required by Rule 9(b)." Dkt. 36 at 4; *see also* Dkt. 13 at 11–13. In its reply, Mobolutions argues that it clearly alleges "the fraudulent statements, the speaker of those statements, when and where those fraudulent statements were made[,] and how they were fraudulent." Dkt. 39 at 4. The Court agrees with Mobolutions.

> The elements of fraud are as follows:
>
> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

14

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)). Fraud claims "are subject to Rule 9's pleading requirements." *Natour v. Bank of Am., N.A.*, No. 21-cv-331, 2021 WL 5239592, at *7 (E.D. Tex. Nov. 10, 2021) (citing *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009)).

In the present case, the Court is satisfied that Mobolutions has sufficiently alleged a plausible claim for relief. Mobolutions alleges that Vital Core failed to make payments for the services it rendered to Geon. Dkt. 32-1 at 10. After Mobolutions threatened to "discontinue providing services" due to non-payment, Mr. Boytsov emailed Vijey Rajendran ("Mr. Rajendran"), a member of Mobolutions, and indicated that Geon would "most likely" have to pay Mobolutions directly. *Id.* at 10, 12. Mr. Boytsov also emailed representatives of Vital Core and affirmatively represented that Geon agreed to take over Mobolutions's charges for 2023. *Id.* at 13. Thereafter, Mr. Boytsov forwarded that email to Mr. Rajendran and encouraged him to sign up as a vendor to receive payments directly from Geon. *See id.* Based on these representations, Mobolutions "worked through the vendor process," became a vendor, and began working for Geon directly. *See id.* at 12, 15–16. However, Geon failed to pay some invoices outright and only offered partial compensation for others. *See id.* at 15–16. In other words, Geon falsely represented that it would pay Mobolutions for its services and, in reliance on those statements, Mobolutions provided its services without adequate compensation. Furthermore, it is a plausible inference that Mr. Boytsov's false statements were made—as Mobolutions asserts—for the purpose of inducing continuous and uninterrupted technical support "at a time when there was time sensitivity for Geon to establish its own data infrastructure." *See id.* at 8, 19. Taken together, Mobolutions has stated sufficient facts, at this early juncture, to establish a plausible claim for relief.

Geon reaches the opposite conclusion by erroneously focusing on some statements contained in the Third Amended Complaint (Dkt. 32-1), while ignoring others. For example, Geon asserts that Mobolutions relies on conclusory and non-specific allegations that Geon made "various representations" to Mobolutions that it would "pay all expenses incurred year to date." *See* Dkts. 13 at 11; 36 at 4. But, as explained above, Mobolutions alleges that Mr. Boytsov made specific, false statements, which induced its continued (and often unpaid) provision of services to Geon.

Furthermore, Geon asserts that Mobolutions does not allege that any purported representations were made with "fraudulent intent." Dkts. 13 at 12–13; 36 at 4. While a fraud claim is subject to a heightened pleading standard, "intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). That is, a plaintiff need only "set forth specific facts that support an inference of fraud." *Burback v. Oblon*, No. 20-cv-946, 2022 WL 2841482, at *3 (E.D. Tex. July 20, 2022) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). As explained above, Mobolutions has done so here by supplying factual allegations suggesting a strong motive to deceive. Whether Mr. Boytsov's statements were actually made with "fraudulent intent" is a question ill-suited for disposition at this stage of the proceedings and may, or may not be, borne out during the discovery process.

Based on the foregoing analysis, the Court concludes that Mobolutions plausibly alleges claims for relief with respect its causes of action for breach of contract and fraud. Because neither claim is futile, the Motion for Leave (Dkt. 32) is granted, and the Third Amended Complaint (Dkt. 32-1) is deemed the live pleading in this matter.

**C.     Moot Requests**

"An amended complaint supersedes the original complaint and renders it of no legal effect . . . ." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes,*

*Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). Several motions currently pending in this case were filed with respect to the First Amended Complaint (Dkt. 6) and the Second Amended Complaint (Dkt. 24) and are, for this reason, moot. *See* Dkts. 13; 16; 30; 35. The Court recognizes that, with respect to some of these motions, this finding will be inconvenient, particularly given the fact the Second Amended Complaint (Dkt. 24) and the Third Amended Complaint (Dkt. 32-1) are identical. *Compare* Dkt. 24, *with* Dkt. 32-1. To the extent these issues remain ripe for adjudication, the parties shall refile their motions in reference to the live pleading, and the Court will issue a report and recommendation as quickly as possible.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Strike (Dkt. 28) and the Motion for Leave (Dkt. 32) are hereby **GRANTED**.

**IT IS THEREFORE ORDERED** that the Second Amended Complaint (Dkt. 24) is **STRICKEN**.

**IT IS FURTHER ORDERED** that the Third Amended Complaint (Dkt. 32-1) is deemed the live pleading in this matter.

**IT IS FURTHER ORDERED** that the Second Motion to Dismiss (Dkt. 13), the Third Motion to Dismiss (Dkt. 16), the Fourth Motion to Dismiss (Dkt. 30), and the Motion for Jurisdiction Discovery (Dkt. 35) are **DENIED AS MOOT**.

**So ORDERED and SIGNED this 23rd day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE